UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

IVAN CALAFF,

                  Petitioner,

   - against -

MICHAEL CAPRA, SUPERINTENDENT, SING
SING CORRECTIONAL FACILITY,

                  Respondent.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/18/16

15 Civ. 7868 (RWS)

OPINION

A P P E A R A N C E S:

    ATTORNEYS FOR PETITIONER

    DAVIS POLK & WARDWELL LLP
    450 Lexington Avenue
    New York, NY 10017
    By:  Daniel F. Kolb, Esq.
         Shahira D. Ali, Esq.
         Matthew Cormack, Esq.
         Sarah Breslow, Esq.

    ATTORNEYS FOR RESPONDENT

    CYRUS R. VANCE, JR.
    District Attorney, New York County
    One Hogan Place
    New York, NY 10013
    By:  David M. Cohn, Esq.

**Sweet, D.J.**

Petitioner Ivan Calaff ("Petitioner" or "Calaff") has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the New York criminal procedure requiring indigent defendants to apply for appellate counsel violated his constitutional right to counsel. For the reasons set forth below, the petition is denied.

The Petitioner seeks habeas relief based on his loss of his constitutional right to appointed counsel and consequent loss of his right to appeal a 1993 conviction. The State seeks denial of the writ because the Petitioner is not in custody under his 1993 conviction, the state court did not violate established Supreme Court precedent, and the Petitioner failed for 19 years to prosecute his appeal.

The issues presented are unique and significant. It is concluded that the State's procedures unreasonably apply the constitutional right to counsel, that the Petitioner is in custody under *Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394 (2001), and that the state court decision that Petitioner failed to prosecute his appeal did not constitute a constitutional violation.

1

## I.   Prior Proceedings

Petitioner's state custody arises from a 2004 conviction for second-degree burglary.  Petitioner's sentence for this conviction was enhanced because it was Petitioner's third violent felony conviction, and he was sentenced to a term of 16 years to life imprisonment as a persistent violent felony offender, in part, based on a 1993 conviction for attempted second-degree burglary to which he pled guilty.

On February 24, 1993, Petitioner pled guilty to an attempted-second degree burglary that took place on January 14, 1993.  According to the criminal complaint, the resident of an apartment came home and discovered two burglars in her apartment, who then ran out of the apartment with cash and jewelry.  (Respondent's Appendix ("RA"), Ex. A.)  Petitioner and a co-defendant, William Martinez, were apprehended within blocks of the apartment only 10 minutes after the burglary took place.  (RA, Ex. E at 1.)  The victim identified both men in a "show-up" at the scene.  Each of the defendants were in possession of jewelry belonging to the victim.  (RA, Ex. A.)

Petitioner pled not guilty to second-degree burglary at his arraignment on February 9, 1993.  (Defendant's New York Court of

Appeals Appendix "A" - 107-108.)  Robert Dorff, Esq. appeared as
Petitioner's appointed counsel.  (A-107.)  At the next court
appearance on February 24, 1993, Mr. Dorff was not present.  (A-
110).  The Court asked if anyone had seen or heard from Mr.
Dorff.  (A-110.)  When a court officer told the Court, "I
haven't see [sic] Mr. Dorf [sic], Your Honor," the trial judge
assigned Bruce Klang, Esq. ("Klang") to represent Calaff.  (A-
110.)  No one objected to the substitution.  (A-110.)  The case
was then adjourned for a second call, at which point Calaff
accepted the People's plea deal to a reduced charge of attempted
second degree burglary.  (A-6, 8-11, 16-18.)

Calaff was sentenced one month later.  At his sentencing
the trial judge instructed Klang to advise Calaff of his
"Appellate rights and advise me that you have done so."  (A-26.)
On the record, Klang stated that he was "handing my client
written notice of his right to appeal, which indicates th[e]
steps he can take to perfect that appeal."  *Id.*  Klang
thereafter timely filed a notice of appeal on Petitioner's
behalf.  (A-30.)

The appellate Notice of Right to Appeal ("Rights Notice")
that Klang handed to Calaff at his sentencing requires the Court
to give the form to the defense attorney and stated as follows:

> The defense attorney must then give it to his/her client
> and state on the record that the defendant has been given
> written notice of his/her right to appeal.  (A-29.)

The Rights Notice explained, "You have a right to appeal a
conviction" and that "you must file a notice of appeal within 30
days." (A-29.)  The Rights Notice provided Petitioner with the
option of have his "present attorney" file the notice, then
provided "[i]f you have appeared pro se . . . " which described
how pro se litigants could file a notice of appeal without
counsel. (A-29.)  The Rights Notice further stated "If you are
without funds, after the notice of appeal has been filed, you
must write to the Appellate Division requesting that counsel be
assigned to you for the purpose of the appeal" and this letter
should "request that you be granted permission to appeal upon
the original record" and "mention that you are without funds
with which to retain counsel or to purchase a transcript of the
proceedings." (A-29.)  The Rights Notice instructed that, "You
must write this letter yourself." (A-29.)  The Rights Notice
did not include information about whether a "present attorney"
would be involved in the filing of such a letter with the
Appellate Division.

4

On September 30, 2004, Petitioner was convicted in a new case of burglary in the second degree. At his sentencing for the 2004 conviction, Petitioner was adjudicated a violent persistent felony offender, based in part on his 1993 conviction and was sentenced to 16 years to life imprisonment.

Petitioner obtained counsel and appealed his 2004 conviction. In 2006, the Appellate Division, First Department, affirmed Petitioner's conviction of his 2004 conviction, and on August 15, 2006, the New York Court of Appeals denied leave for that 2004 conviction. *People v. Calaff*, 30 A.D.3d 193 (1st Dep't 2006), *lv. denied*, 7 N.Y.3d 810 (2006).

In 2012, Petitioner with the help of the Center for Appellate Litigation, challenged his 1993 conviction on the grounds that the trial Justice had improperly replaced Calaff's assigned counsel and appointed new counsel. The People argued that after 19 years, Calaff had abandoned his appeal and that the appeal also failed on the merits. The appeal was unanimously dismissed on February 19, 2013 by the Appellate Division, First Department. *People v. Calaff*, 103 A.D.3d 500 (1st Dep't 2013). Petitioner sought leave to the Court of Appeals, which was granted on September 6, 2013. *People v. Calaff*, 21 N.Y.3d 1072 (2013). The Court of Appeals decided

5

four consolidated cases and affirmed the Appellate Division's dismissal of Calaff's appeal. *People v. Perez et al.*, 23 N.Y.3d 89 (2014).

Petitioner sought a writ of certiorari to the United States Supreme Court, which was denied on October 6, 2014. *Calaff v. New York*, 135 S.Ct. 273 (2014).

On October 2, 2015, Petitioner filed this petition for a writ of habeas corpus. The petition was heard and marked fully submitted on April 21, 2016.

## II. Standard of Review

Section 2254 of the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") provides a federal remedy for state prisoners if their continued custody is in violation of federal law. Pub.L. No. 104-132, 100 Stat. 1214, codified at 28 U.S.C § 2254(a); *see Chandler v. Florida,* 449 U.S. 560, 571, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981). ("This Court has no supervisory authority over state courts, and, in reviewing a state court judgment, we are confined to evaluating it in relation to the Federal Constitution."). Errors of state law are not cognizable on federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 71-

6

72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Petitioners bear the burden of proving violations of federal law by a preponderance of the evidence. *See Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997).

A state court's adjudication may be overturned only if it either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8 U.S.C. § 2254(d)(1-2); *see Williams v. Taylor,* 529 U.S. 362, 375-76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "contrary to" clause, the writ may issue in two circumstances: first, if the state court decision "applies a rule that contradicts the governing [Supreme Court] law"; and second, if the state court decision addresses a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrives at a result different to that reached by the Court. *Lockyer v. Andrade,* 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), (quoting *Williams,* 529 U.S. at 405-06). The "clearly established Federal law" refers to Supreme Court

holdings, as opposed to the dicta, as of the time of the relevant state court decision. *See Williams,* 529 U.S. at 412. A state court decision involves an "unreasonable application" of Supreme Court precedent when the state court either "identifies the correct governing legal rule" from the Supreme Court's cases but "unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti,* 537 U.S. 19, 25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). Any determination of a factual issue made by a state court must be presumed correct unless the petitioner can show by clear and convincing evidence that such presumption should not apply. *See* 28 U.S.C. § 2254(e)(1).

In addition, the Supreme Court's jurisprudence on the "unreasonable application" clause of § 2254(d)(1) makes "clear that whether a state court's decision was unreasonable must be in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652, 124 S.Ct. 2736, 159 L.Ed.2d 683 (2004). In *Cullen v. Pinholster,* the Court recently emphasized that, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas Petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." 563 U.S. 170, 184, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011).

**III.  The Procedure Requiring Petitioner to Apply for Appellate Counsel Is an Unreasonable Restriction of His Right to Appellate Counsel**

### a. An Indigent Criminal Defendant Must Be Provided Counsel on Their First Appeal

"'[The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. . . . The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done.'" *Gideon v.*

*Wainwright*, 372 U.S. 335, 343 (1963) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462 (1938)).

The United States Supreme Court applied this concept to the right to counsel on criminal appeals, holding that a state cannot administer criminal appeals in a manner that "discriminate[s] against some convicted defendants on account of their poverty." *Douglas*, 372 U.S. at 355 (citing *Griffin v. Illinois*, 351 U.S. 12 (1956). *Griffin* held that "to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside." *Griffin*, 351 U.S. at 19.

*Douglas* and its progeny have held that "the Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal if the state has provided such an appeal as of right." *Taveras v. Smith*, 463 F.3d 141, 147 (2d Cir. 2006) (New York does provide a first appeal as of right, so *Douglas* applies to defendants in New York). *Griffin* required the poor to pay for and furnish a copy of the trial transcript in order to appeal, which violated the Due Process and Equal Protection Clauses because this was a form of "invidious discrimination." *Griffin*, 351 U.S. at 17-18. *Douglas* applied *Griffin* to hold

10

that appointment of appellate counsel to the indigent could not depend on a *pro se* preliminary determination of whether the appeal had merit. *Douglas*, 372 U.S. at 355.

*Douglas* established in 1963 that criminal defendants are entitled to counsel on appeal (as long as the state provides for a first appeal as of right). Today 48 states, the federal government, and New York's Second Appellate Department all provide indigent defendants with appointed counsel on appeal or provide them counsel to assist in obtaining appointed appellate counsel. (*See*, Petitioner's Br. at 1, n. 1.) Michigan and New York's First, Third, and Fourth Appellate Departments are the only jurisdictions that do not provide counsel to assist in the appellate process. *Id.*

### b. **The First Department's Procedures for Appointing Appellate Counsel to Indigent Defendants Are Unreasonable Preconditions**

The Respondent contends that an appellate court may require Petitioner to satisfy "reasonable preconditions on her right to appeal." *Goeke v. Branch*, 514 U.S. 115, 119-120 (1995). While there can be reasonable preconditions on the right to appellate counsel, the preconditions in this case were unreasonable because the Rights Notice Petitioner's attorney handed him

11

during his 1993 sentencing was confusing and deficient in describing what he needed to do to obtain appellate counsel.

Here, neither the trial judge nor the Rights Notice adequately explained Petitioner's right to appellate counsel, which functioned as an unreasonable precondition on Calaff's right to appellate counsel. At the sentencing hearing, the trial judge directed Klang to "advise him of his Appellate rights and advise me that you have done so." (A-26.) Klang replied to the trial judge that he was "handing my client written notice of his right to appeal, which indicates th[e] steps he can take to perfect that appeal." *Id.* Calaff was not advised that he would be unrepresented after counsel noticed his appeal, and the steps Calaff would need to take in order to obtain appellate counsel were not explained, except as set forth in the Rights Notice. (A-29.)

Calaff was not advised that: (1) he would no longer have an attorney after Klang noticed his appeal; and (2) he would need to draft a notarized letter describing his financial circumstances in order to obtain new appellate counsel to perfect that appeal. (A-29.) These steps violated clearly established Supreme Court precedent because "the Sixth Amendment guarantees a defendant the right to have counsel present at all

12

'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227-228 (1967)). As the Tenth Circuit has found, counsel was required for Calaff at this critical step in the criminal process after sentencing as he begins the appeals process. *Baker v. Kaiser*, 929 F.2d 1495, 1499 (10th Cir. 1991) ("The right to counsel is required in the hiatus between the termination of trial and the beginning of an appeal in order that a defendant know that he has the right to appeal, how to initiate an appeal and whether, in the opinion of counsel, an appeal is indicated.").

The Rights Notice was unreasonably confusing for a *pro se* indigent defendant because it did not clarify that Petitioner was no longer represented by counsel. In describing how to file a notice of appeal, the Rights Notice provided Petitioner with the option of have his "present attorney" file the notice. Even discrediting the self-serving affidavit in which Petitioner claims that Klang promised that he would "take care of" the appeal, Klang did file the notice of appeal. (A-72, A-30.) Pursuant to the First Department's procedures Calaff lost his counsel as soon as Klang noticed his appeal (See N.Y. Comp. Codes, R & Regs. Tit.22, § 606.5 (2015)). The Rights Notice failed to make clear that he was then unrepresented and needed

13

to complete additional steps to obtain appellate counsel and to perfect his appeal. (A-29.) The result of this procedure was that Petitioner was effectively denied the right to counsel at a "critical stage" of his case. *Baker v. Kaiser*, 929 F.2d at 1499. It is not surprising that 48 states and New York's Second Department all provide counsel at this critical stage between noticing and perfecting an appeal (or at least until the defendant obtains counsel to perfect the appeal) because to deny a criminal defendant counsel at this critical stage violates the appellate due process rights guaranteed by *Griffin* and *Douglas*.

For defendants without a "present attorney," the Rights Notice provided information "[i]f you have appeared pro se . . . " describing how *pro se* litigants can file a notice of appeal without counsel. (A-29.) The Rights Notice next explained "If you are without funds, after the notice of appeal has been filed, you must write to the Appellate Division requesting that counsel be assigned to you for the purpose of the appeal." (A-29.) However, the Rights Notice did not state that this section also applied to defendants with a "present attorney." Unlike the reasonable precondition in *Goeke* merely requiring the defendant not to flee while an appeal is pending, it was unreasonable to require Petitioner, who could have incorrectly believed he was represented by counsel, to know he too needed to

14

submit the letter proving his indigency. *Goeke*, 514 U.S. at 119-120.

Even if Calaff understood the Rights Notice, he would have needed to draft a notarized letter on his own in order to prove his indigency. The Rights Notice's instruction to write a notarized letter was unreasonable because in *Halbert* the Court noted that U.S. prison populations are plagued by substantial literacy problems. *Halbert v. Michigan*, 545 U.S. 605, 621 (2005) (finding that 68% of the state prison population did not complete high school and "many lack the most basic literacy skills"). In fact, *Halbert* found that "seven out of ten inmates fall in the lowest two out of five levels of literacy—marked by an inability to do such basic tasks as write a brief letter to explain an error on a credit card bill." *Id.* Even further, many inmates "have learning disabilities and mental impairments." *Id.* Despite the challenges for inmates identified by the Supreme Court in *Halbert* with basic reading and writing skills, in New York's First Department criminal defendants are expected to read and comprehend the confusing Rights Notice, then draft a letter in order to obtain the appellate counsel guaranteed to them under the Court's decision in *Douglas*.

15

Next, the Rights Notice directs defendants that, "You must write this letter yourself." (A-29.) A criminal defendant should have a lawyer at such a critical stage in their appeals process. "Navigating the appellate process without a lawyer's assistance is a perilous endeavor for a layperson," a task even more challenging for the "many [state prisoners who] lack the most basic literacy skills." *Halbert v. Michigan*, 545 U.S. at 621.

While a lawyer may be able to discern that this Rights Notice requires an indigent person to draft a letter regardless of the option they chose for how to notice the appeal, it is unreasonable to require a *pro se* defendant to understand that they were no longer represented by counsel and must follow this two-step process in order to obtain a new lawyer to perfect their appeal. *Goeke*, 514 U.S. at 119-120. It was at this critical stage that Calaff needed counsel to navigate the appellate process. *Baker v. Kaiser*, 929 F.2d at 1499. Calaff's due process rights were violated when he was required to complete "a meaningless ritual, while the rich has a meaningful appeal." *Douglas*, 372 U.S. at 358. Here it was a meaningless ritual for the First Department to require Petitioner, *pro se*, to understand based on the Rights Notice that he needed to write the notarized letter proving indigency and requesting appellate

16

counsel, just as the preliminary merits review procedure in *Douglas*. Therefore, the First Department's procedure as articulated in the Rights Notice was unconstitutional as an unreasonable precondition on the right to appellate counsel.

## IV. The Petitioner Was "In Custody" for His 1993 Conviction

In order to bring a habeas action, the petitioner must be "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). This requirement means that the petitioner in a habeas action must be in state custody pursuant to the "conviction or sentence under attack." *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Respondent argues that this requirement bars the instant action since Petitioner is in custody for his 2004 conviction and has already "fully served" the sentence for his 1993 conviction. *United States ex rel. Myers v. Smith*, 444 F.2d 75, 76-77 (2d Cir. 1971).

The general rule that has been adopted by the Supreme Court is that:

"[i]f . . . a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant ... may not collaterally attack his prior conviction through a motion under § 2255."

17

*Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. at 402 (citing
*Daniels v. United States*, 532 U.S. 374, 382 (2001)). In
*Lackawanna*, the Supreme Court extended the rule applied in
*Daniels* (a habeas case brought under § 2255) to habeas petitions
brought under § 2254. *Lackawanna*, 532 U.S. at 382.

However, this action is not barred by the "in custody"
requirement because the Supreme Court in *Lackawanna* provided for
several exceptions to the ability of petitioners to challenge a
prior conviction used to enhance a state sentence. The majority
opinion provided for an exception "where there was a failure to
appoint counsel in violation of the Sixth Amendment." *Id.* at
404. A majority of the Court provided for other exceptions.
Justice Souter's dissent incorporated his dissent from *Daniels*,
which found that "there is no excuse for picking and choosing
among constitutional violations" instead finding that a
defendant should be able to challenge any sentencing enhancement
based on a constitutional violation in a prior case. *Daniels*,
532 U.S. at 391 (Souter, J. dissenting) (incorporated in
*Lackawanna*, 532 U.S. at 408 (Souter, J. dissenting)).

In addition to those three Justices who would allow a
challenge to a prior conviction on any constitutional ground,
three members of the majority in *Lackawanna* further found that,

18

"It is not always the case, however, that a defendant can be faulted for failing to obtain timely review of a constitutional claim." 532 U.S. at 405. The plurality provided examples when this might be the case, though there is no indication in the opinion that the list of examples, which was dicta, was exhaustive. *Id.* This is just such a case in which Calaff did not bring a timely appeal for no fault of his own because requiring Calaff to properly interpret the confusing Rights Notice was an unreasonable precondition on his right to appellate counsel. *Goeke*, 514 U.S. at 119-120.

## V. The State Court Determination on Waiver Does Not Raise a Constitutional Issue

Respondent argues that Petitioner waived his appellate rights by waiting 19 years to perfect his appeal, which amounted to willful neglect and a conscious choice not to appeal his conviction. Respondent argues this was waiver because "a defendant who is properly informed of his appellate rights may not let the matter rest and then claim he did not waive the right to appeal." *People v. West*, 100 N.Y.2d 23, 26 (2003). However, Petitioner argues that he did not "intelligently and understandingly waive the assistance of counsel" because when "the assistance of counsel is a constitutional requisite, the

19

right to be furnished counsel does not depend on a request."
*Carnley v. Cochran*, 369 U.S. 506, 513 (1962).

Between 1993 and 2004, Petitioner did not knowingly and
intelligently waive his right to the appointment of appellate
counsel. He could not have waived this right because he evinced
his desire to appeal by requesting his trial counsel to notice
his appeal. The Supreme Court has held that:

> When a defendant whose indigency and desire to appeal are
> manifest does not have the services of his trial counsel on
> appeal, it simply cannot be inferred from defendant's
> failure specifically to request appointment of appellate
> counsel that he has knowingly and intelligently waived his
> right to the appointment of appellate counsel.

*Swenson v. Bosler*, 386 U.S. 258, 260 (1967). Here, the parties
dispute whether Petitioner manifested his desire to appeal, in
light of the long delay between when he noticed his appeal in
1993 and perfected it in 2012.

Petitioner did not waive his right to counsel between 1993
and 2004 because his rights were not "simply and directly"
explained to him. *Halbert*, 545 U.S. at 624. Petitioner
manifested his desire to appeal when his trial counsel noticed
his appeal. *Mackenzie v. Marshall*, No. 07 Civ. 4559 (SJF), 2009
WL 3747128, at *3 (E.D.N.Y. Nov. 5, 2009); *U.S. ex. rel. Edwards
v. Follette*, 281 F.Supp. 632, 636 (S.D.N.Y. 1968). Calaff's

20

indigency and manifest intent to appeal are established and
therefore "it simply cannot be inferred from defendant's failure
specifically to request appointment of appellate counsel that he
has knowingly and intelligently waived his right." *Swenson*, 386
U.S. at 260.

However, in 2004 Petitioner was convicted of a new count of
second-degree burglary. (A-47.) Petitioner was adjudicated as
a violent persistent felony offender because it was his third
conviction for a violent felony. (A-47.) Petitioner
successfully requested appellate counsel and was assigned the
Center for Appellate Litigation for his 2004 case. (A-47.)
Respondent argues that after Petitioner successfully obtained
counsel in this 2004 matter, he could no longer claim that he
did not understand how to obtain counsel for his 1993 case.

The New York Court of Appeals correctly determined that
Calaff abandoned his appeal by waiting too many years to
prosecute and perfect it, citing its decision in *People v West*,
100 N.Y.2d 23, 28 (2003). *People v. Perez*, 23 N.Y.3d at 99. As
in *West*, here the "defendant was adequately informed of his
right to appeal, he failed to perfect it in a timely manner and
therefore abandoned any right to an appeal he may have had."
*West*, 100 N.Y.2d at 28. In *West*, the petitioner incorrectly

21

filed habeas corpus actions in state court before exhausting his state court appeals. *Id.* at 25.   The petitioner in *West* attempted to seek some relief from a court, even if it was the wrong court.   In this case, Calaff made no effort to pursue his appeal until 2012.

While interpreting the Rights Notice's requirement to draft a letter was not a reasonable precondition on the right to appeal, "Documentary requirements and timely filing schedules" are "reasonable preconditions" on the right to appeal.   *Taveras v. Smith*, 463 F.3d at 149.   In this case, Calaff took no action to perfect his appeal from the 1993 conviction after he obtained appellate counsel for his 2004 burglary case until 2012.   Calaff abandoned his claim because he did not take any actions to prosecute the appeal of his 1993 case between 2004 and 2012. *West*, 100 N.Y.2d at 28.

Petitioner points to two letters he wrote to Klang as evidence that he sought to pursue his appeal between 2004 and 2012.   These letters requested a copy of Petitioner's case file, any motions filed by his previous attorney, and Klang's recollections about their discussions concerning whether Petitioner should plead guilty in 1993.   (A-80-82.)   However, neither letter requested information about the status of

22

Petitioner's appeal of his 1993 conviction, which had been
noticed, but not perfected.  (A-80-82.)  Instead, Petitioner's
first attempt to perfect his appeal of his 1993 occurred in
2012, when an attorney who had represented Petitioner in the
appeal of his 2004 conviction, made a motion to be assigned as
Petitioner's counsel for the 1993 conviction.  (A-31-33.)

New York law allows appellate courts to dismiss appeals
that are not properly or timely perfected.  In this case, there
is no dispute that Calaff's appeal was not timely perfected.
New York's Criminal Procedure Law provides, "At any time" before
an appeal is decided that the appellate court may "dismiss such
appeal upon the ground of . . . failure of timely prosecution or
perfection thereof, or other substantial defect, irregularity or
failure of action by the appellant with respect to prosecution
or perfection of such appeal."  N.Y. Crim. Proc. Law §
470.60(1).  The New York appellate courts in this case properly
exercised their "broad discretion" to dismiss the appeal for
failure to prosecute and perfect this claim in a timely fashion.
*People v. Taveras*, 10 N.Y.3d 227, 244 (2008).

For these reasons, the state court decision was correct in
holding that "the delays were extremely long, and the defendants
did not have a good excuse for them."  *People v. Perez*, 23

N.Y.3d at 101.  While the delay between 1993 and 2004 was not Petitioner's fault, his failure to prosecute his appeal between 2004 and 2012 was a valid ground for dismissal by the New York Court of Appeals.  *West*, 100 N.Y.2d at 28.

**VI. Conclusion**

For the reasons stated above, Petitioner's petition for writ of habeas corpus is denied.

It is so ordered.

**New York, NY**
**October /8, 2016**

ROBERT W. SWEET
U.S.D.J.

25